# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOAQUIN RAMON QUIROZ,   1:09-CV-01131 AWI GSA HC

     Petitioner,   FINDINGS AND RECOMMENDATION
              REGARDING PETITION FOR WRIT OF
  v.         HABEAS CORPUS

KEN CLARK, Warden,

     Respondent.
_____/

   Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.

## BACKGROUND

   Petitioner is currently in the custody of the California Department of Corrections pursuant

to a judgment of the Superior Court of California, County of Kern, following his conviction by

jury trial on May 9, 2005, of second degree murder with personal and intentional discharge of a

firearm proximately causing great bodily injury or death (Cal. Penal Code §§ 187(a),

12022.53(d)), and possession of a firearm by a ward of the court (Cal. Penal Code § 12022.1(e)).

(LD[1] 1.)  Both offenses were determined to have been committed in the furtherance of a criminal

street gang (Cal. Penal Code § 186.22(b)(1)(C)).  (LD 1.)  He was sentenced to serve an

indeterminate term of 40 years to life in state prison.  (LD 1.)

---

[1]"LD" refers to the documents lodged by Respondent with his answer.

1

1    Petitioner filed a timely notice of appeal.  On November 13, 2006, the California Court of

2    Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned

3    decision.  (LD 2.)  Petitioner then filed a petition for review in the California Supreme Court.

4    (LD 3.)  The petition was summarily denied on February 21, 2007.  (LD 4.)

5    Petitioner filed several collateral challenges to his conviction in the state courts.  On

6    December 13, 2007, he filed a petition for writ of habeas corpus in the Kern County Superior

7    Court.  (LD 5.)  The petition was denied on January 25, 2008.  (LD 6.)  He then filed a petition in

8    the Fifth DCA on June 3, 2008. (LD 9.)  The petition was denied on August 7, 2008, on the

9    ground that Petitioner had "failed to summarize all of the evidence that arguably supports the

10   gang enhancement as required by *People v. Duvall* (1995) 9 Cal.4th 465, 475." (LD 10.)  On

11   October 6, 2008, he filed a habeas petition in the California Supreme Court.  (LD 13.)  The

12   petition was denied on March 25, 2009.  (LD 14.)  Finally, on June 30, 2009, he filed a habeas

13   petition in the Kern County Superior Court.  (LD 15.)  The petition was denied on September 1,

14   2009. (LD 16.)

15   On June 29, 2009, Petitioner filed the instant federal habeas petition.  He presents the

16   following claims for relief: 1) He claims the evidence was insufficient to support the gang

17   enhancement; 2) He alleges the trial court denied a jury instruction on third party culpability in

18   violation of his constitutional rights; 3) He claims the trial court violated his constitutional rights

19   by disallowing him the opportunity to confront and cross-examine Officer Talbot with

20   impeaching evidence; 4) He contends the trial court violated his right to present a defense by

21   excluding evidence that his accusers had committed crimes in front of the same residence; 5) He

22   alleges he received ineffective assistance of counsel by his defense attorney and appellate counsel

23   because both failed to raise the claim of insufficiency of evidence to support the criminal street

24   gang enhancement; 6) He claims he was denied a fair trial by the admission of highly

25   inflammatory gang evidence; and 7) He claims he was denied a fair trial by the cumulative effect

26   of the alleged errors.

27   On July 6, 2009, Respondent filed an answer to the petition.  On November 16, 2010,

28   Petitioner filed a traverse.

2

**STATEMENT OF FACTS**[2]

Early one evening, Rosa Rodriguez (Rodriguez) looked outside her house on Lake Street in Bakersfield and saw Quiroz, whom she knew as "Whisper," hanging out with his cousin Alejandro "Flaco" Monje and his friends Carlos "Criminal" Alvarez, Armando "Mando" Morales, and Luis "Louie" Morales. The group hung out there almost every day, but that evening, for the first time, she saw a gun in Quiroz's waistband.

Fifteen minutes later, Rodriguez's son Raul Alatorre (Raul) saw Quiroz run down the street with a gun in his hand-yelling "Bakers, Bakers" and firing shots-and then saw Anthony DeJesus drop to the ground. Yelling "Bakers, Bakers" warns that members of the rival Loma Bakers criminal street gang could be in the area.

Gasping for air and praying to God, DeJesus told a friend and a police officer that four "Mexican guys" whom he did not know and who said nothing to him had shot him. DeJesus was not a gang member. He died of massive hemorrhage from gunshot wounds inflicted by a Hi-Point .380 pistol.

A few months before the murder, Quiroz had stolen a Hi-Point .380 pistol from his girlfriend in Southern California, where he had been an 18th Street gang member before moving to Bakersfield and aligning himself with the Cycos 13 criminal street gang. Prominent at the crime scene were graffiti of the Cycos 13 gang, which controlled that neighborhood, the 18th Street gang, and Quiroz's gang moniker, Whisper. On the day after the murder, a gang task force officer told Quiroz he was under arrest but did not tell him why. Quiroz volunteered, "I didn't shoot anyone last night," and said he had been at work "from 5:30 to 1:30" that night. The parties stipulated that Quiroz did not show up on a surveillance video at his workplace until 1:18 a.m.

(LD 2.)

**DISCUSSION**

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

---

[2] The Fifth DCA's summary of the facts in its November 13, 2006, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the Fifth DCA.

1  enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

2  F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

3  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

4  1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

5  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

6  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

7  II.    Standard of Review

8      The instant petition is reviewed under the provisions of the Antiterrorism and Effective

9  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

10  70 (2003).  Under the AEDPA, a petitioner can prevail only if he can show that the state court's

11  adjudication of his claim:

12      (1) resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the Supreme
13      Court of the United States; or

14      (2) resulted in a decision that was based on an unreasonable determination of the
        facts in light of the evidence presented in the State court proceeding.

15
16  28 U.S.C. § 2254(d); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

17      As a threshold matter, this Court must "first decide what constitutes 'clearly established

18  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

19  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

20  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

21  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

22  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

23  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

24      Finally, this Court must consider whether the state court's decision was "contrary to, or

25  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

26  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

27  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

28  Court on a question of law or if the state court decides a case differently than [the] Court has on a

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

III.   Review of Claims

A.   Insufficiency of Evidence of Criminal Street Gang Enhancement

In his first ground for relief, Petitioner claims the evidence was insufficient to support the allegation that he committed the murder in furtherance of a criminal street gang.  Petitioner states

1   the victim was not a gang member and the only gang evidence in the case was the fact that the

2   crime took place in a gang area.

3       Petitioner presented this claim by habeas petition first to the Kern County Superior Court.

4   (LD 5.)  The superior court rejected the claim finding sufficient evidence supported the gang

5   enhancement allegation.  (LD 6.)  Petitioner next raised the claim to the Fifth DCA by habeas

6   petition. (LD 9.)  The petition was denied for failure to summarize the evidence that arguably

7   supported the gang enhancement as required in People v. Duvall, 9 Cal.4th 465, 475 (1995).  (LD

8   10.)  Petitioner next presented the claim to the California Supreme Court by habeas petition. (LD

9   13.)  The California Supreme Court denied the petition without comment. (LD 14.)  When the

10  California Supreme Court's opinion is summary in nature, the Court must "look through" that

11  decision to a court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797,

12  804-05 & n. 3 (1991).  In this case, the superior court determined that there was more than

13  sufficient evidence from which a rational trier of fact could have found proof of the gang

14  enhancement allegation beyond a reasonable doubt.

15      The law on insufficiency of the evidence claim is clearly established.  The United States

16  Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must

17  determine whether, viewing the evidence and the inferences to be drawn from it in the light most

18  favorable to the prosecution, any rational trier of fact could find the essential elements of the

19  crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency

20  claims are judged by the elements defined by state law.  Id. at 324 n.16.  On federal habeas

21  review, AEDPA requires an additional layer of deference to the state decision.  Juan H. v. Allen,

22  408 F.3d 1262, 1274 (9th Cir.2005).  This Court must determine whether the state decision was

23  an unreasonable application of the Jackson standard.

24      Pursuant to Cal. Penal Code § 186.22(b), "any person who is convicted of a felony

25  committed for the benefit of, at the direction of, or in association with any criminal street gang,

26  with the specific intent to promote, further, or assist in any criminal conduct by gang members"

27  is punishable with an additional prison term.  In this case, there was substantial evidence from

28  which a rational jury could determine that Petitioner committed the murder in association with a

criminal street gang with the specific intent to promote, further, or assist his fellow gang members. Petitioner complains that the only gang evidence was the mere fact that the victim was shot in a gang area.  Not so.

There was evidence that the area the victim had been shot was not just a gang area, but an area that had been fought over by several rival gangs.  (RT[3] 850-52.)  The area had gang graffiti denoting the L.A., Cycos, and Trece (or "13") gangs. (RT 850.)  For about four to five months prior to and up to the shooting, gang members would congregate in that area near a mailbox on a daily basis. (RT 852, 968-969.)  Petitioner was one of the individuals who would daily congregate in that area. (RT 971.)  There were others who also congregated there who went by the monikers: "Risky, Criminal, Flaco, Biggie, Wicked, and Scoobey." (RT 971.)  They had tattoos of "CS-13," "Cycos" and "13," and were members of the Cycos 13 gang. (RT 990,1330-1333.)  Flaco had a tattoo of a "C" on his right shoulder and a tattoo of an "S" on his left shoulder. (RT 990.)  Flaco was Petitioner's cousin. (RT 1329, 1367.)  Risky was bald and had a tattoo of "CS-13" on the back of his head. (RT 991.)  Criminal was bald. (RT 991.) Wicked was also bald and had a tattoo of "CS-13" on his head. (RT 991.)

On the evening of the shooting, Raul Alatorre saw Petitioner, Risky, Flaco and Wicked in the area while he was playing basketball in his yard. (RT 976.)  As Raul was going to retrieve his dog, he saw Petitioner running down the street toward Petitioner's house and yelling, "Bakers, Bakers." (RT 979.)  A gang expert testified that Petitioner's act of yelling "Bakers" served to warn his fellow gang members that members of the rival Loma Bakers gang were in the area. (RT 1370.)  As Raul was returning back to his house, he saw Petitioner running back to the mailbox location where his friends had confronted the victim. (RT 981-982.)  Petitioner then fired a gun at the victim three times, and the victim fell to the ground. (RT 982.)  Just before he died, the victim stated his attackers were four Hispanic males in their twenties with shaved heads. (RT 859.)

A gang expert testified regarding the relationships of the various gangs in the area.  (RT

---

[3]"RT" refers to the Reporter's Transcript on Appeal.

1311.)  The expert explained that there were numerous gangs in Bakersfield. (RT 1314.)  The

Loma Bakers gang is a Hispanic gang that dominated the area of the shooting. (RT 1314-1317.)

The Cycos 13 gang is a Los Angeles-based gang that moved into a small area in the 1000 block

of Lake Street; this was in the center of the area traditionally controlled by the Loma Bakers. (RT

1314-1317.)  The expert testified that Hispanic gangs consider it disrespectful for another gang to

move into their territory, and they will generally respond with violence. (RT 1314-1315.)

Further, when a gang is assaulted or attacked by another gang, the gang must answer in kind or

lose power, respect and authority in the area. (RT 1315.)

       The expert explained that graffiti is very important to gangs and serves to identify the

areas over which a gang claims control. (RT 1321.)  It also serves to instill fear in the

neighborhood. (RT 1321.)  If graffiti is marked out, it is considered disrespectful to those who

placed the graffiti and can also serve as a threat. (RT 1321-1322.)  In the area of the shooting, the

Loma Bakers and Cycos 13 gangs had placed their own graffiti and marked out the other's in

their ongoing turf war. (RT 1322.) At the time of the shooting, the Cycos 13 gang was actively

involved in continuous and ongoing criminal activities including drug sales, assaults, murders,

and vandalism. (RT 1324.)  The group of individuals who Petitioner was with at the time of the

shooting were members of the Cycos 13 gang. (RT 1330-1333.)  On a brick wall in the area were

graffiti of the 18th Street gang of Los Angeles and the Cycos 13 gang; the graffiti signified an

alignment between the two. (RT 1355.)  There were also instances of graffiti crossed out which

signified an ongoing rivalry with Bakersfield gangs. (RT 1356, 1358.)  Also on the wall in one-

foot high letters was written Petitioner's moniker, "Whisper." (RT 1356.)  The graffiti around his

moniker demonstrated that Petitioner claimed membership in the 18th Street gang, claimed

alignment with the Cycos 13 gang, and claimed the area for the two. (RT 1356.) On other walls

in the area, Petitioner's moniker was written in graffiti along with Cycos 13 and 18th Street

denoting Petitioner's membership and alliance. (RT 1357.)

       Petitioner had tattoos on his body showing his membership in the 18th Street gang of Los

Angeles. (RT 1360-1361.)  Based on the expert's review of the information, he opined that

Petitioner was a member of the 18th Street gang. (RT 1366.)  He also opined that Petitioner had

1   aligned himself with the Cycos 13 gang. (RT 1367-1368.)  The expert further opined that a gang

2   member's act of assaulting an uninvolved person, while in the company of fellow gang members,

3   served to intimidate the neighborhood and solidify the presence and authority of the gang. (RT

4   1370-1372.)  The expert opined by hypothetical that an act as that which was allegedly done by

5   Petitioner served to benefit the Cycos 13 gang. (RT 1372.)

6        Clearly, there was ample circumstantial evidence from which a rational jury could find

7   beyond a reasonable doubt that Petitioner committed the offense in association with a gang with

8   the specific intent to promote, further, or assist his fellow gang members.  Petitioner fails to

9   demonstrate that the state court's decision was "contrary to, or involved an unreasonable

10  application of, clearly established Federal law," or an "unreasonable determination of the facts in

11  light of the evidence."  The claim should be rejected. 28 U.S.C. § 2254(d).

12       B.   Refusal of Petitioner's Jury Instruction on Third Party Culpability

13       Petitioner next alleges the trial court denied his right to present a defense by refusing to

14  instruct the jury on the defense theory of third party culpability.

15       This claim was presented on direct appeal to the Fifth DCA which denied the claim in a

16  reasoned decision on November 13, 2006. (LD 2.)  Petitioner then raised the claim to the

17  California Supreme Court, where it was rejected without comment.  (LD 3,4.)  When the

18  California Supreme Court's opinion is summary in nature, the Court must "look through" that

19  decision to a court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797,

20  804-05 & n. 3 (1991).  In this case, the appellate court analyzed and rejected the claim as

21  follows:

22       Quiroz argues that the denial of his request for additional instruction on third-
     party culpability constituted a violation of his due process and jury trial rights. The
23   Attorney General argues the contrary.

24       The additional instruction that Quiroz proffered on third-party culpability read as
     follows:
25

26       "You have heard evidence that a person other than the defendant may have
     committed the offense with which the defendant is charged. The defendant is not
27   required to prove the other person's guilt beyond a reasonable doubt. Defendant is
     entitled to an acquittal if the evidence raises a reasonable doubt in your minds as
28   to the defendant's guilt. Such evidence may by itself raise a reasonable doubt as to
     the defendant's guilt. However, its weight and significance, if any, are matters for

9

1   your determination. If after consideration of this evidence, you have a reasonable
    doubt that the defendant committed this offense, you must give the defendant the
2   benefit of the doubt and find him not guilty."

3       Refusing to so instruct, the court instead relied on the standard instruction on
    reasonable doubt (CALJIC No. 2.90):

4
5       "A defendant in a criminal action is presumed to be innocent until the contrary is
        proved. And in case of a reasonable doubt whether his guilt is satisfactorily
        shown, he is entitled to a verdict of not guilty. This presumption places upon the
6       People the burden of proving him guilty beyond a reasonable doubt.

7       "Reasonable doubt is defined as follows: It is not a mere possible doubt because
        everything relating to human affairs is open to some possible or imaginary doubt.
8       It is that state of the case which, after the entire comparison of all the evidence-
        comparison and consideration of all the evidence, leaves the minds of the jurors in
9       that condition that they cannot say they feel an abiding conviction of the truth of
        the charge."

10
11      The court instructed the jury to consider the instructions "as a whole and each in
    light of all the others." (CALJIC No. 1.01.) Jurors are presumed able to correlate, follow,
12  and understand the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)
    Since CALJIC No. 2.90 is adequate in a case with a third-party culpability defense, the
    court has the discretion to reject as repetitious additional instruction on that defense.
13  (*People v. Earp* (1999) 20 Cal.4th 826, 887; *People v. Wright* (1988) 45 Cal.3d 1126,
    1134.)
14
15      In argument to the jury, Quiroz's attorney attacked the self-interest and the "rank
    inconsistencies and falsehoods" in the Alatorre family testimony. He argued that
16  Rodriguez's story about seeing Quiroz with a gun before the shooting and Raul's story
    about seeing him "do the shooting" were a ploy to divert police attention from the
17  Alatorre family and to put the spotlight on Quiroz, who as an "admitted gang member"
    was an "extremely vulnerable target." With adequate instruction and spirited defense
18  argument to the jury, error, if any, in refusing his proffer was harmless beyond a
    reasonable doubt.

19  (LD 2.)

20      In general, challenges to jury instructions are issues of state law and are not cognizable in

21  a federal habeas corpus action. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal

22  collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by

23  itself so infected the entire trial that the resulting conviction violates due process. Id. at 72.

24  Additionally, the instruction may not be judged in artificial isolation, but must be considered in

25  the context of the instructions as a whole and the trial record. Id.  The court must evaluate jury

26  instructions in the context of the overall charge to the jury as a component of the entire trial

27  process. United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v, Kibbe,  431 U.S.

28  145, 154 (1977).  Furthermore, even if it is determined that the instruction violated the

petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional

instruction had a substantial influence on the conviction and thereby resulted in actual prejudice

under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (whether the error had a substantial and

injurious effect or influence in determining the jury's verdict.). Hanna v. Riveland, 87 F.3d 1034,

1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so

prejudicial that it will support a collateral attack on the constitutional validity of a state court's

judgment is even greater than the showing required to establish plain error on direct appeal. Id.

In addition, the Court notes that Petitioner's burden is "especially heavy" with this claim,

because "[a]n omission or an incomplete instruction is less likely to be prejudicial than a

misstatement of law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

In this case, as discussed by the appellate court, the jury was adequately instructed on

reasonable doubt. In addition, defense counsel argued repeatedly that Daniel Alatorre had

committed the murder and that the jury could not find Petitioner guilty beyond a reasonable

doubt. Thus, there was no prejudice to the defense resulting from the trial court's refusal to give

the additional instruction. Petitioner fails to show that the state court determination of his claim

was contrary to or an unreasonable application of clearly established federal law. This claim

should be denied.

### C.   Refusal of Right to Confront Officer with Pitchess Evidence

In his third claim, Petitioner contends the trial court denied his right to confront and

cross-examine witnesses by refusing to admit certain evidence that Officer Talbot had accused

others and was confrontational as revealed by a Pitchess[4] motion.

This claim was presented on direct appeal to the Fifth DCA where it was denied in a

reasoned decision. It was then presented to the California Supreme Court where it was rejected

without comment. As previously stated, the Court looks through to the court below that has

issued a reasoned opinion. Ylst, 501 U.S. at 804-05 & n. 3.

The appellate court denied the claim as follows:

---

[4]Pitchess v. Superior Court, 11 Cal.3d 531 (1974).

Quiroz argues that the grant of the prosecutor's motion to exclude evidence from the arresting officer's personnel file precluded impeachment of his testimony and constituted an abuse of discretion and a due process violation. The Attorney General argues the contrary.

The prosecutor's motion sought to exclude evidence disclosed to the defense in *Pitchess* discovery about complaints of excessive force and racial bias against the officer who arrested Quiroz. The discovery showed that in a search for a shooting suspect the officer arrested two people who, inter alia, refused his order to remove their hands from their pockets. One was convicted of assault on a peace officer. Both were convicted of resisting arrest. The prosecutor argued that the *Pitchess* evidence did not attack the officer's credibility, that an African-American officer "very sensitive to racial epithets" was ready to testify that "this never happened," and that a "mini trial" about the incident would ensue if the evidence were to go to the jury. The court ruled the evidence inadmissible.

The admissibility of evidence of conduct to impeach witness credibility is subject to the court's discretion. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295; Evid.Code, § 352.) The court has broad discretion to impose reasonable limits on cross-examination if the evidence at issue poses risks of, inter alia, undue consumption of time or confusion of the issues with only marginally relevant evidence. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679; Evid.Code, § 352.) Section 1044 imposes on the court the duty "to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." Since the workplace surveillance video devastated Quiroz's credibility just as the African-American officer's testimony would have destroyed the credibility of the *Pitchess* arrestees, the evidence at issue in the prosecutor's motion was, at best, "only marginally relevant" to the arresting officer's credibility. (*Van Arsdall, supra,* 475 U.S. at p. 679.) The court's ruling on the motion constituted neither an abuse of discretion nor a due process violation.

(LD 2.)

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. am. VI.  The Sixth Amendment's Confrontation Clause was made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  Pointer v. Texas, 380 U.S. 400, 403-05 (1965). The Confrontation Clause gives a defendant the right "to be confronted with the witnesses against him." Id. "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739 (1987), *quoting* Delaware v. Fensterer, 474 U.S. 15, 20 (1985).  The Confrontation Clause does not prevent a trial judge from imposing "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'

safety, or interrogation that is repetitive or only marginally relevant." <u>Delaware v. Van Arsdall</u>,

475 U.S. 673, 679 (1986); <u>Crane v. Kentucky</u>, 476 U.S. 683, 689-90 (1986). Nevertheless, the

Court has held that a defendant's Confrontation Clause rights have been violated when he is

"prohibited from engaging in otherwise appropriate cross-examination ... and thereby 'to expose

to the jury the facts from which jurors ... could appropriately draw inferences relating to the

reliability of the witness.'" <u>Id</u>. at 680, *quoting* <u>Davis v. Alaska</u>, 415 U.S. 308, 318 (1974).  The

defendant meets his burden by showing that "[a] reasonable jury might have received a

significantly different impression of [a witness'] credibility had . . . counsel been permitted to

pursue his proposed line of cross-examination." <u>Id</u>.

As set forth above, the appellate court considered Petitioner's arguments in accordance

with <u>Van Arsdall</u> and determined that the trial court did not abuse its discretion in granting the

prosecution's motion to exclude the <u>Pitchess</u> evidence.  Petitioner fails to demonstrate that the

state court decision was an unreasonable application of <u>Van Arsdall</u>.  The contested evidence of

Officer Talbot's alleged use of racial epithets and excessive force had no tendency to call the

truthfulness of his testimony into question.  At best, the evidence was only marginally relevant.

Moreover, the trial court's interests in avoiding unnecessary consumption of time and confusion

of the issues greatly outweighed any interest Petitioner had in presenting the evidence.  Even if

the evidence had been presented, the jury would not have received a significantly different

impression of Officer Talbot's credibility.

Accordingly, the state court determination of this claim was not contrary to or an

unreasonable application of clearly established federal law. The claim should be rejected.

D.   Exclusion of Third Party Culpability Evidence

Petitioner next claims the trial court violated his right to present a defense by excluding

evidence of specific bad acts done by the Alatorres which could have impugned their character

and demonstrated their culpability for the crime.

Like the previous two claims, this claim was presented on direct appeal to the Fifth DCA

where it was rejected in a reasoned decision.  It was then presented to the California Supreme

Court where it was summarily denied.  Because the Supreme Court's decision is summary in

1   nature, the Court must look through to the last reasoned decision, which in this case was the

2   opinion of the Fifth DCA.

3          In rejecting this claim, the Fifth DCA stated:

4          Quiroz argues that the denial of his motions to admit evidence to support a third-
       party culpability defense and the grant of the prosecutor's opposing motions constituted
5      an abuse of discretion and a due process violation. The Attorney General argues the
       contrary.

6
7          After argument, the court ruled sequentially on all of the motions. One of Quiroz's
       motions sought to admit, and the prosecutor's opposing motion sought to exclude, school
       records showing that Daniel, a special education student, brought an imitation firearm to
8      school so he could return the toy to his friend, that a special education psychologist
       opined he had no malice but simply failed to comprehend the problem, and that his
9      brother Jaime Alatorre (Jaime) shot staples at another student in class, refused to stay
       after class, left without permission, and complained he was not allowed to get a drink.
10     The court ruled the evidence at issue in those motions inadmissible.

11         Another of Quiroz's motions sought to admit, and the prosecutor's motion sought
       to exclude, evidence that Rodriguez's neighbor Dominga Mendez (Mendez) saw her and
12     possibly her sons fighting with Mexican nationals whom she identified as the "border
       brothers," that she saw members of Rodriguez's family attempting to rob the border
13     brothers, and that on the basis of body size and shaved head she thought the person she
       saw in Lake Street at the time of the murder was the same son whom she possibly saw
14     fighting with the border brothers. Yet another of Quiroz's motions sought to admit
       evidence that Jesse Ruiz said that Daniel "used to hang out with the gang bangers." The
15     court ruled the evidence at issue in those motions inadmissible.

16         Third-party culpability evidence, like any other evidence, is admissible if relevant
       (Evid.Code, §§ 210, 350), but that determination is subject to the court's discretion to
17     "exclude evidence if its probative value is substantially outweighed by the probability that
       its admission will (a) necessitate undue consumption of time or (b) create substantial
18     danger of undue prejudice, of confusing the issues, or of misleading the jury" (Evid.Code,
       § 352). Admissible third-party culpability evidence need not constitute substantial proof
19     of a probability that someone else committed the charged crime but must raise a
       reasonable doubt of the accused's guilt. (*People v. Lewis* (2001) 26 Cal.4th 334, 372.)
20     Jaime's school records were as patently irrelevant to Quiroz's third-party culpability
       defense as was his proffer of Mendez's conspicuously speculative link between the border
21     brothers and anyone at the crime scene. Daniel's school records, like the opinion about
       how he used to hang with gang members, were patently incapable of raising a reasonable
22     doubt about Quiroz's guilt. Our review of the record satisfies us that the court's rulings on
       the evidence at issue constituted neither an abuse of discretion (*People v. Farmer, supra,*
23     47 Cal.3d at p. 912; *People v. Karis, supra,* 46 Cal.3d at p. 638) nor a due process
       violation (*People v. Sanders, supra,* 11 Cal.4th at p. 510, fn. 3; *Jammal v. Van de Kamp,*
24     *supra,* 926 F.2d at pp. 919-920).

25         Finally, in reliance on *Wardius v. Oregon* (1973) 412 U.S. 470 (*Wardiu* "), Quiroz
       argues that the court "constructed a one way street to prison" and violated due process by
26     denying him "the same character and quality of evidence concerning its suspect as the
       state did with its suspect." In *Wardius,* the high court acknowledged a particular suspicion
27     "of state trial rules which provide nonreciprocal benefits to the State when the lack of
       reciprocity interferes with the defendant's ability to secure a fair trial." (*Id.* at p. 475, fn.
28     6.) The markedly disparate substantiality of the prosecution and defense evidence here

1    makes his reliance on *Wardius* misplaced.

2  (LD 2.)

3        Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a

4  federal habeas corpus proceeding.  Estelle, 502 U.S. 62, 68 (1991); Middleton v. Cupp, 768 F.2d

5  1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).  Accordingly, incorrect state court

6  evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are

7  affected.

8        "[S]tate and federal rulemakers have broad latitude under the Constitution to establish

9  rules excluding evidence from criminal trials." United States v. Scheffer, 523 U.S. 303, 308

10  (1998); see also Crane v. Kentucky, 476 U.S. 683, 689-690 (1986); Marshall v. Lonberger, 459

11  U.S. 422, 438, n. 6 (1983); Chambers v. Mississippi, 410 U.S. 284, 302-303 (1973); Spencer v.

12  Texas, 385 U.S. 554, 564 (1967). This latitude, however, has limits. "Whether rooted directly in

13  the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or

14  Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants

15  'a meaningful opportunity to present a complete defense.'" Crane, supra, at 690, *quoting*

16  California v. Trombetta, 467 U.S. 479, 485 (1984).  This right is abridged by evidence rules that

17  "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the

18  purposes they are designed to serve.'" Scheffer, supra, at 308, *quoting* Rock v. Arkansas, 483

19  U.S. 44, 58 (1987).

20        While the Constitution thus prohibits the exclusion of defense evidence under rules that

21  serve no legitimate purpose or that are disproportionate to the ends that they are asserted to

22  promote, well-established rules of evidence permit trial judges to exclude evidence if its

23  probative value is outweighed by certain other factors such as unfair prejudice, confusion of the

24  issues, or potential to mislead the jury. See, e.g., Fed. Rule Evid. 403; Uniform Rule of Evid. 45

25  (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904

26  (1904). Plainly referring to rules of this type, the Supreme Court has stated that the Constitution

27  permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an

28  undue risk of 'harassment, prejudice, [or] confusion of the issues.'" Crane, supra, at 689-690,

1  *quoting* <u>Delaware v. Van Arsdall</u>, <u>supra</u>, 475 U.S. at 679.  <u>See also</u> <u>Montana v. Egelhoff</u>, 518 U.S.

2  37, 42 (1996) (plurality opinion) (terming such rules "familiar and unquestionably

3  constitutional").

4          Petitioner fails to demonstrate that the state court decision rejecting his claim was

5  unreasonable.  As stated by the appellate court, the school records were "patently irrelevant to . . .

6  [Petitioner's] third party culpability defense as was his proffer of Mendez's conspicuously

7  speculative link between the border brothers and anyone at the crime scene." (LD 2.)  In addition,

8  the school records and evidence that one of the Alatorres had previously been seen with gang

9  members were "patently incapable of raising a reasonable doubt about [Petitioner's] guilt." (LD

10  2.) It is clear that the state court determination of this claim was not contrary to or an

11  unreasonable application of clearly established federal law.  The claim should be denied.

12          E.   Ineffective Assistance of Trial Counsel and Appellate Counsel

13          Petitioner claims he received ineffective assistance from both trial and appellate counsel

14  because they failed to argue that insufficient evidence supported the special allegation that the

15  crime was committed in furtherance of a criminal street gang.

16          As with his first claim, this claim was presented by habeas petition first to the Kern

17  County Superior Court. (LD 5.)  The superior court rejected the claim finding no ineffectiveness

18  on the part of either counsel.  (LD 6.)  Petitioner next raised the claim to the Fifth DCA by

19  habeas petition. (LD 9.)  The petition was denied for failure to summarize the evidence that

20  arguably supported the gang enhancement as required in <u>People v. Duvall</u>, 9 Cal.4th 465, 475

21  (1995).  (LD 10.)  Petitioner next presented the claim to the California Supreme Court by habeas

22  petition.  (LD 13.)  The California Supreme Court denied the petition without comment.  (LD 14.)

23  When the California Supreme Court's opinion is summary in nature, the Court must "look

24  through" that decision to a court below that has issued a reasoned opinion.  <u>Ylst v. Nunnemaker</u>,

25  501 U.S. 797, 804-05 & n. 3 (1991).  In this case, the superior court determined that Petitioner's

26  claim of ineffective assistance was plainly without merit.

27          *1.  Ineffective Assistance of Trial Counsel*

28          The law governing ineffective assistance of counsel claims is clearly established.  <u>Canales</u>

1   v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging

2   ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington,

3   466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner

4   must show that counsel's performance was deficient, requiring a showing that counsel made

5   errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

6   Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation

7   fell below an objective standard of reasonableness, and must identify counsel's alleged acts or

8   omissions that were not the result of reasonable professional judgment considering the

9   circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

10  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair

11  trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  Judicial scrutiny of counsel's

12  performance is highly deferential.  A court indulges a strong presumption that counsel's conduct

13  falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687

14  (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

15      Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a

16  reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

17  different," 466 U.S. at 694.  A court need not determine whether counsel's performance was

18  deficient before examining the prejudice suffered by the petitioner as a result of the alleged

19  deficiencies.  Strickland, 466 U.S. 668, 697 (1984).  Since the defendant must affirmatively

20  prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

21      In this case, Petitioner fails to demonstrate that counsel's failure to argue the insufficiency

22  of the evidence of the gang allegation was an error so serious that counsel's representation fell

23  below an objective standard of reasonableness.  As previously discussed, substantial evidence

24  supported the gang allegation, and Petitioner's claim to the contrary is without merit.  Therefore,

25  counsel's failure to present the argument was not error.  Further, Petitioner cannot demonstrate

26  prejudice resulting from the alleged error.  Accordingly,   Petitioner fails to demonstrate that the

27  state court's decision was contrary to, or involved an unreasonable application of, clearly

28  established Federal law, or an unreasonable determination of the facts in light of the evidence.

1   28 U.S.C. §§ 2254(d)(1), (2). The claim should be denied.

2       *2.   Ineffective Assistance of Appellate Counsel*

3       Petitioner raises the same argument with respect to his appellate counsel.  Claims of

4   ineffective assistance of appellate counsel are reviewed according to Strickland's two-pronged

5   test.  See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d

6   846, 847 (9th Cir.1986).  A defendant must therefore show that counsel's advice fell below an

7   objective standard of reasonableness and that there is a reasonable probability that, but for

8   counsel's unprofessional errors, defendant would have prevailed on appeal.  Miller, 882 F.2d at

9   1434 & n. 9, *citing* Strickland, 466 U.S. at 688, 694.  However, appellate counsel does not have a

10  constitutional duty to raise every nonfrivolous issue requested by defendant.  Jones v. Barnes,

11  463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n. 10.  The weeding out of weaker issues

12  is widely recognized as one of the hallmarks of effective appellate advocacy.  Miller, 882 F.2d at

13  1434 (footnote and citations omitted).  As a result, appellate counsel will frequently remain

14  above an objective standard of competence and have caused her client no prejudice for the same

15  reason--because she declined to raise a weak issue.  Id.

16      In this case, appellate counsel did not render ineffective assistance.  The insufficiency of

17  evidence claim is without merit; therefore, counsel's decision not to raise it cannot be considered

18  unreasonable.  In addition, Petitioner cannot demonstrate prejudice, for even if appellate counsel

19  had raised the issue, there is no likelihood the claim would have been successful.  Petitioner's

20  claim is without merit and should be denied.

21      F.   Admission of Gang Evidence

22      Petitioner next alleges the trial court violated his due process rights by admitting gang

23  evidence.

24      This claim was presented on direct appeal to the Fifth DCA where it was rejected in a

25  reasoned decision.  It was then presented to the California Supreme Court where it was

26  summarily denied.  As the Supreme Court's decision was summary in nature, the Court must

27  look through to the last reasoned decision, which in this case was the opinion of the Fifth DCA.

28      The Fifth DCA denied the claim as follows:

Quiroz argues that the denial of his motions to exclude gang evidence constituted an abuse of discretion and a due process violation. The Attorney General argues the contrary.

Quiroz's motions sought to exclude certain evidence about, inter alia, the Cycos 13 gang, the 18th Street gang, his gang tattoos, and gang graffiti in the neighborhood at the time of the murder, as well as any gang and any offense irrelevant to proof of the criminal street gang allegations. The court denied each of his motions.

In the interest of brevity, we incorporate by reference our discussion rejecting Quiroz's argument about the denial of his motion to bifurcate the criminal street gang allegations. (*Ante,* part 1.) In addition, we will note some other gang evidence in the record. The gang expert testified, inter alia, that the Cycos 13 gang originated in Los Angeles and "came to Bakersfield and set up shop in traditional Loma Baker territory" by taking over a single neighborhood in a single block of Lake Street. On the basis of admissions, gang tattoos, and instigation of a gang fight, the gang expert testified that Quiroz was a member of the 18th Street gang. He testified that Quiroz was "loud and proud" about his 18th Street gang membership but that his cousin's membership in the Cycos 13 gang in Bakersfield led him to befriend, hang with, and bond with members of that gang. He identified some of the people hanging with Quiroz just before the murder on Lake Street as Cycos 13 gang members. He testified that gang graffiti there showed not only an alignment in Bakersfield between the 18th Street gang and the Cycos 13 gang but also a rivalry between those gangs, on the one hand, and Bakersfield gangs, on the other.

Quiroz argues that *People v. Bojorquez* (2002) 104 Cal.App.4th 335 (*Bojorquez*) governs the issue and requires reversal. In *Bojorquez,* a case with no criminal street gang allegation, a gang expert's broad testimony on criminal behavior by members of "'everything from ... Asian Gangs to Motorcycle Gangs, [and] Aryan Brotherhood Gangs'" had "minimal, if not nonexistent," probative value without a connection between those gangs and the Hispanic gang of which the accused were members. (*Id* . at pp. 341-343.) So the admission of that evidence constituted an abuse of discretion. (*Id.* at pp. 345-346.)

*Bojorquez* is inapposite, however, in light of evidence showing an indubitable connection between Quiroz and both the 18th Street gang and the Cycos 13 gang, on the basis of which the jury found two criminal street gang allegations true. (See *People v. Hernandez, supra,* 33 Cal.4th at pp. 1048-1050.) The prejudice that Evidence Code section 352 seeks to avoid is not the damage to a defense that naturally flows from highly probative evidence. (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" (*People v. Farmer* (1989) 47 Cal.3d 888, 912, overruled on another ground by *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.) Our review of the record satisfies us that the court's rulings on the evidence at issue constituted neither an abuse of discretion (*People v. Farmer, supra,* 47 Cal.3d at p. 912; *People v. Karis, supra,* 46 Cal.3d at p. 638) nor a due process violation (*People v. Sanders, supra,* 11 Cal.4th at p. 510, fn. 3; *Jammal v. Van de Kamp, supra,* 926 F.2d at pp. 919-920).

(LD 2.)

As previously discussed, the admissibility of evidence is a matter of state law and improper admission of evidence does not usually violate the U.S. Constitution and is not normally cognizable in federal habeas corpus. Estelle, supra, 502 U.S. at 68. Nevertheless, there

1  can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally

2  unfair and resulted in a denial of due process. Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir.

3  1993), *cert. denied*, 510 U.S. 1191 (1994). Petitioner must show that there were no permissible

4  inferences to be drawn from admitted evidence and that the evidence is "of such quality as

5  necessarily prevents a fair trial." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991),

6  *quoting* Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir.1986).

7          Petitioner fails to demonstrate that the admission of this evidence amounted to a due

8  process violation. The gang evidence was clearly relevant to the special allegation that the crime

9  was committed in association with and in furtherance of a gang. The admitted gang evidence

10  certainly was highly probative and damaging to the defense, but this does not mean it was

11  fundamentally unfair. As Petitioner fails to demonstrate that the state court's decision was

12  "contrary to, or involved an unreasonable application of, clearly established Federal law," or an

13  "unreasonable determination of the facts in light of the evidence," the claim should be rejected.

14  28 U.S.C. § 2254(d).

15          G.   Cumulative Error

16          A defendant may prove that he has suffered prejudice based on the cumulative effect of

17  errors. Kyles v. Whitley, 514 U.S. 419, 421-22, 440-41 (1995) (in determining whether

18  exculpatory evidence suppressed by state is sufficiently material to violate Due Process Clause,

19  court is required to assess "cumulative" or "net" effect of all suppressed evidence and commits

20  legal error if it only conducts piecemeal analysis of each item of suppressed evidence); O'Neal v.

21  McAninch, 513 U.S. 432, 435-36 (1995) (accepting lower court's assumption that "confusion

22  arising out of a trial court instruction about the state of mind necessary for conviction combined

23  with a related statement by a prosecutor" required habeas corpus relief if "combined" error was

24  not harmless); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir.1999) ("cumulative effect of several

25  errors may prejudice a defendant to the extent that his conviction must be overturned"); Cooper

26  v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir.1978) (concluding cumulative effect of alleged errors

27  may demonstrate prejudice), *cert. denied*, 440 U.S. 974 (1979).

28          In this case, however, none of the claims raised by Petitioner have merit. Accordingly,

Petitioner cannot demonstrate prejudice resulting from the cumulative effect of the errors, because there are no errors affecting the verdict to accumulate. United States v. Jeremiah, 493 F.3d 1042, 1047 (9th Cir.2007).  The claim should be rejected.

### RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     June 23, 2011**                    **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE

21